Chrysler Financial

RECD JUL 19 2007

**WISCONSIN**
**Retail Installment Contract - Simple Interest**

DEAL# 45718

## Parties

Contract Date 07/14/2007

Account Number [redacted]

Creditor/Seller
Name BRYDEN MOTORS, INC.
Address 548 BROAD STREET
BELOIT, WI 53511

Buyer (and Co-Buyer)
Name JAMIE C JENSEN
Name MARY F JENSEN
Billing Address 866 MARVIN ST
SOUTH BELOIT, WINNEBAGO, IL 61080-2
(Include County)

Unless otherwise specified, "you" and "your" refer to the Buyer (and Co-Buyer), and "we" and "us" refer to the Creditor/Seller, listed above in section labeled Parties. The vehicle described below, in the section labeled Vehicle and Trade-in Information, is referred to as "Vehicle." After being quoted both a cash ("Cash Price", below) and credit price ("Total Sale Price", below) for the vehicle, you have chosen to buy the vehicle on credit. You agree to the terms and conditions on the front and back of this contract. You also acknowledge delivery and acceptance of the vehicle.

## Type of Retail Installment Contract

☒ Standard ☐ Balloon Payment ☐ Fixed Value

You understand that no matter which box is checked, this is not a lease. If the Fixed Value box is checked and you exercise your option to transfer the vehicle to us as provided in section 14 on the back of this contract, the vehicle turn-in deduction and excess mileage deduction as described in section 14 are as follows: (1) the vehicle turn-in deduction is NA, and (2) for any miles that the vehicle is driven in excess of N/A miles per year, the excess mileage deduction is NA per mile. The vehicles current odometer reading is N/A.

## Federal Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE E* The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments E* The amount you will have paid after you have made all payments as scheduled. | Total Sale Price E* The total cost of your purchase on credit, including your down payment of: $ 8811.48 |
|---|---|---|---|---|
| 7.49 % | $ 7745.93 | $ 31188.07 | $ 38934.00 | $ 47745.48 |

Payment Schedule - Your payment schedule will be: * E means Estimate

| Number of Payments | Amount of Each Payment | When Payments Are Due ☒ Monthly ☐ (Beginning Date of Payment) |
|---|---|---|
| 71 | 540.75 | 08/29/2007 |
| N/A | N/A | N/A |
| N/A | N/A | N/A |
| + 1 Final Payment | Amount of Final Payment | Due Date of Final Payment |
| 1 | 540.75 | 07/29/2013 |

*Late Charge.* If a payment or part thereof is more than 10 days late, you will be charged $10 or 5% of the unpaid amount, whichever is less.

*Prepayment.* If you pay off early, you will not have to pay a penalty.

*Security Interest.* You are giving us a security interest in the vehicle being purchased.

*Additional Information.* See the other side of this contract for additional information about security interest, nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## Vehicle and Trade-in Information

1. VEHICLE DESCRIPTION

☒ New ☐ Used VIN 1D7HU18297S239828

2007 DODGE RAM 150

2. PRIMARY INTENDED USE

☒ Personal ☐ Commercial ☐ Agricultural ☐

If no box is checked, or if Personal box is checked, you agree to use the vehicle for personal, family, or household purposes.

3. TRADE-IN DESCRIPTION

2002 (Year) FORD (Make) EXPEDITION (Model)

## Financing

4. ITEMIZATION OF AMOUNT FINANCED

a. Cash Price
 (i) Vehicle (including accessories, delivery, installation charges, if any) ... $ 38373.16
 (ii) Sales Tax ... $ 1458.39
 (iii) Service Contract (optional) ... $ N/A
 (iv) N/A ... $ N/A
 (v) Cash Price ... $ 39831.55

b. Downpayment
 (i) Cash Downpayment ... $ N/A
 (ii) Manufacturer's Rebate ... $ 9233.16
 (iii) Gross Allowance on Trade-in $ 15039.00
 (iv) Pay-off on Trade-in $ 15460.68
 (v) Net Allowance on Trade in ... $ -421.68
 (vi) Downpayment ... $ 8811.48
 If less than $0, disclose on Line c(i) and enter $0 for the Downpayment.

c. Unpaid Balance of Cash Price ... $ 31020.07
 (i) Unpaid Trade-in Lien Amount to be Financed ... $ N/A
 Paid to: N/A

d. Other Charges Including Amounts Paid to Others on Your Behalf*
 (i) Paid to Public Officials for:*
  (a) Other Taxes ... $ N/A
  (b) Filing Fees ... $ N/A
  (c) License Fees ... $ 78.00
  (d) Certificate of Title Fees ... $ 65.00
  (e) Registration Fees ... $ 25.00
 (ii) Paid to: *N/A For: N/A ... $ N/A
 (iii) Paid to: *N/A For: N/A ... $ N/A
 (iv) Paid to: *N/A For: N/A ... $ N/A
 (v) Paid to: *N/A For: N/A ... $ N/A
 (vi) Paid to: *N/A For: N/A ... $ N/A
 (vii) Paid to Insurance Companies for *
  (a) Optional Credit Life ... $ N/A
  (b) Optional Credit Accident & Health ... $ N/A
  (c) Optional N/A ... $ N/A
  (d) Optional N/A ... $ N/A
 (viii) Subtotal ... $ 168.00

e. Amount Financed ... $ 31188.07

*Seller may be retaining a portion of those amounts.*

## Summary of Insurance and Other Coverages

5. REQUIRED VEHICLE INSURANCE

YOU ARE REQUIRED TO HAVE PHYSICAL DAMAGE INSURANCE. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. YOU MAY OBTAIN VEHICLE INSURANCE FROM A PERSON OF YOUR CHOICE.

6. OPTIONAL CREDIT INSURANCE AND OTHER OPTIONAL INSURANCE OR COVERAGE.

CREDIT LIFE, CREDIT DISABILITY, GUARANTEED AUTOMOTIVE PROTECTION COVERAGE AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM.

## Summary of Insurance and Other Coverages (cont'd.)

**Optional Insurance/Coverage**

Credit life and credit disability insurance end on the original due date of the last payment due under this contract.

The optional insurance you desire is indicated by a check in the applicable box below.

☐ Credit Life
Term ______ $ N/A Premium
N/A Insurer | N/A Beneficiary
N/A Buyer's Signature | N/A Co-Buyer's Signature

☐ Credit Disability
Term ______ $ N/A Premium
N/A Insurer | N/A Beneficiary
N/A Buyer's Signature | N/A Co-Buyer's Signature

☐ Type N/A
$ N/A Premium/Cost | Term N/A
N/A Insurer/Provider | N/A Insured/Beneficiary
N/A Buyer's Signature | N/A Co-Buyer's Signature

☐ Type N/A
$ N/A Premium/Cost | Term N/A
N/A Insurer/Provider | N/A Insured/Beneficiary
N/A Buyer's Signature | N/A Co-Buyer's Signature

## Signatures

NOTICE TO THE BUYER(S)

(A) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES AND PRIVACY POLICY ON THE BACK OF THIS CONTRACT.

BUYER ACKNOWLEDGES ABOVE NOTICE PERTAINING TO NON-COVERAGE AGAINST LIABILITY, AND APPLICABLE NOTICE TO BUYER IF BUYER DESIRES CREDIT INSURANCE. BUYER ALSO ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT COMPLETELY FILLED IN PRIOR TO BUYER'S EXECUTION HEREOF, CONTAINING CREDITOR'S (SELLER'S) SIGNATURE AS ON ORIGINAL.

YOU HAVE THE RIGHT AT ANY TIME WITHIN 10 DAYS OF THE DATE OF THIS CONTRACT TO RETURN TO SELLER OR ANY ASSIGNEE THE POLICY, CERTIFICATE OF INSURANCE OR NOTICE OF PROPOSED CREDIT INSURANCE WHICH YOU HAVE RECEIVED AND TO RECEIVE A REFUND OF ANY PREMIUM PAID BY YOU.

X [signature] Buyer Signs X [signature] Co-Buyer Signs

WARNING

IF THE AMOUNTS OF PAYMENTS OR THE DATES ON WHICH THEY ARE PAYABLE UNDER THIS AGREEMENT ARE NOT EQUAL, DO NOT SIGN THIS PAPER UNLESS YOU ARE CERTAIN THAT THIS PAYMENT SCHEDULE MEETS YOUR NEEDS.

The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its rights to receive a part of the Finance Charge.

SELLER

By signing below, the Seller accepts this contract and assigns it to DC FIN SVCS AMER LLC ("Assignee") subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement between Seller and DaimlerChrysler Financial Services Americas LLC. Seller further warrants and represents that Buyer is purchasing the vehicle for Buyer's or Co-Buyer's use.

X Bryden Motors [signature] Seller Signs By [signature] Finance Title

INSURANCE VERIFICATION

Seller (or Dealer) has verified that the insurance coverage described in Section 11 is in force on the date of this contract.

SENZ INSURANCE (Insurance company) ______ (Policy No.) [initials] (Insurance Coverage verified (Employee of Seller/Dealer please initial))

MARK SENZ (Insurance agent) 608-362-3313 (Phone number)

630 E GRAND AVE BELIOT WI 53511 (Address)

## Payments, Security Interest and Vehicle Treatment

7. **PAYMENT.** You agree to make all payments when they are due. Accepting a late payment or late charge does not change your payment due date. This is a simple interest contract. **Your final payment may be larger or smaller, depending on whether you make payments late or early.** Your payments will be applied first to the earned and unpaid part of the Finance Charge, then to the unpaid Amount Financed and then to any other amounts due. The Finance Charge is earned by applying the Annual Percentage Rate divided by 365 to the unpaid Amount Financed for the number of days outstanding. You may prepay your debt without penalty. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, seized, or missing.

8. **LATE CHARGES/RETURNED CHECK FEE.** You will pay a late charge on payments, or parts of payments, which are received by us more than 10 days after the scheduled due date. The late charge is shown on the front of this contract. Our acceptance of any late payment of late charge does not change your payment due date or mean that you may keep making payments after they are due. You will pay a fee of $15 if any payment you make is returned or rejected for any reason.

9. **SECURITY INTEREST.** You give us a security interest in the vehicle and any accessories, equipment, and replacement parts put on the vehicle; all insurance policies and service contracts financed in this contract, and any rebates, refunds, or proceeds that relate to these policies or contracts; proceeds of any insurance policies on the vehicle; and all money or goods received for the vehicle. This security interest secures payment of all amounts you owe in this contract. You agree to ensure that our security interest (lien) on the vehicle is shown on the title.

10. **VEHICLE TREATMENT.** You agree: to maintain the vehicle in good condition; not to misuse the vehicle; to keep the vehicle free from the claims of others; and not to break any laws or otherwise expose the vehicle to confiscation. You agree that without our written consent you will not: transfer your equity in the vehicle; sell, rent or lease the vehicle; or take the vehicle out of the United States for more than 30 days. You agree to notify us of any change of address where the vehicle is kept.

## Insurance

11. **REQUIRED PHYSICAL DAMAGE INSURANCE.** You agree to maintain physical damage insurance, acceptable to us that insures you and us against loss or damage to the vehicle, during the term of this contract. You may obtain coverage from any insurance company you choose. We must approve the type and amount of the insurance. You agree to give us written proof of such insurance coverage. Whether or not the vehicle is insured, you must pay for the vehicle if it is lost, damaged, seized, or destroyed. We may endorse and sign your name on any settlement, draft, or check representing payment made by an insurance company for a loss related to the vehicle.

## Default

12. **DEFAULT.** You will be in default if any of the following circumstances occurs:

A. **Non-Payment.** With respect to a transaction other than one involving a vehicle primarily used for agricultural purposes: (1) if the interval between scheduled payments is 7 months or less, and you have outstanding an amount exceeding one full payment which has remained outstanding for more than 10 days after the scheduled or deferred due dates, or you have failed to pay the first payment or the last payment, within 40 days of its scheduled or deferred due date; (2) if the interval between scheduled payments is more than 7 months, and you have all or any part of one scheduled payment outstanding for more than 60 days after its scheduled or deferred due date; or, (3) if the transaction is scheduled to be repaid in a single payment, and you have all or any part of the payment outstanding for more than 40 days after its scheduled or deferred due date. With respect to a transaction involving a vehicle primarily used for agricultural purposes, you have failed to pay any payment within 40 days after its due date or failed to pay the first or only payment when due.

B. **Other Non-performance.** You fail to observe or perform any of the other covenants or duties contained in this contract if the failure materially impairs the condition, value or protection of our rights in the vehicle or materially impairs your ability to pay amounts due under this contract.

We shall have the rights and remedies for default provided by applicable law or if this contract evidences a consumer credit transaction, then as provided by the Wisconsin Consumer Act. Each obligation as to which an event of default has occurred shall, at our option, and without further notice or demand, become immediately payable unless the contract evidences a consumer credit transaction and notice to you and an opportunity to cure is required by §425.105 of the Wisconsin Statutes. In the event notice to you and an opportunity to cure are required, such obligation shall become payable if such default is not cured within 15 calendar days after mailing such notice to you.

Also, we have the right to take possession of the vehicle. We may, without use of force or other breach of the peace, enter the premises where the vehicle may be and take immediate possession of the vehicle, including equipment and accessories. If this contract evidences a consumer credit transaction, and except as otherwise provided in §425.205 and §425.207 of the Wisconsin Statutes, you have a right to a court hearing on the issue of default before repossession may be effected in Wisconsin, but by voluntarily surrendering such vehicle, you waive such right.

If the vehicle is repossessed, and the contract evidences a consumer credit transaction, you may have the right to redeem the vehicle by tendering to us the amounts and performance required under §425.208 of the Wisconsin Statutes. If you exercise your right to redeem the vehicle under §425.208 of the Wisconsin Statutes, the performance deposit tendered by you shall not bear interest while held by us. If you do not redeem the vehicle, we will, after giving notice to you and any other party entitled thereto, dispose of the vehicle in a commercially reasonable manner, which may include either a public sale or a private sale. The proceeds of the sale, less allowed expenses, will be used to pay the amount still owed on this contract. If the contract evidences a consumer credit transaction, allowed expenses shall be those reasonable and bona fide expenses under §422.413(2g) of the Wisconsin Statutes.

If the proceeds of the sale, less allowed expenses, are not sufficient to pay the net amount still owed on this contract, we may recover the deficiency with interest at the highest lawful rate from you or anyone who has succeeded to your obligation. If this contract evidences a consumer credit sale, and we repossess or accept a voluntary surrender of the vehicle, you will not be liable to us for the unpaid balance of the debt arising from the sale of the vehicle if the amount owing at the time of default is $1,000, or less. If, after we apply the net proceeds of the sale to what you owe, there is money left, we will pay it to you.

If, during repossession of the vehicle, we come into possession of any property which is not security for this contract, we will hold it for you. If you do not claim the property within thirty (30) days after we have repossessed the vehicle, we can dispose of the property and have no liability you.

## Balloon Payment/Fixed Value

13. **BALLOON PAYMENT CONTRACT.** The information in this section 13 applies only if this contract is a balloon payment contract, as indicated on the front of this contract by a check in the box next to "Balloon Payment" in the Type of Retail Installment Contract section.

You may owe us more or less than the amount of the final payment if you did not make your payments as scheduled.

When the final payment is due (the amount and the due date are shown on the front) you may either (i) pay us the final payment and any additional amounts that you owe us, in cash, and keep the vehicle, or (ii) pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us at the then prevailing rates, terms and conditions, as long as you are not in default or have not received a bankruptcy discharge of your legal obligation to pay. If you choose to refinance the final payment, you agree to give us 30 days written notice before the due date and provide proof of current acceptable vehicle insurance. You must apply the proceeds of the refinance to the final payment.

14. **FIXED VALUE CONTRACT.** The information in this section 14 applies only if this contract is a Fixed Value contract, as indicated on the front of this contract by a check in the box next to "Fixed Value" in the Type of Retail Installment Contract section.

You may owe us more or less than the amount of the final payment if you did not make your payments as scheduled.

A. You have the following options to satisfy your final payment when it is due *(the amount and the due date are shown on the front)*:
   1. Transfer the vehicle to us and pay us any additional amounts due (see C. below);
   2. Pay us the final payment and any additional amounts that you owe us, in cash, and keep the vehicle; or
   3. Pay us any additional amount that you owe us in excess of the final payment, refinance the final payment with us, and keep the vehicle (see B. below).

B. **Refinance Final Payment.** You may pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us, at the then prevailing rates, terms and conditions, as long as you are not in default or have not received a bankruptcy discharge of your legal obligation to pay. You agree to give us 30 days written notice before the due date and provide proof of current acceptable vehicle insurance. You must apply the proceeds of the refinance to the final payment.

C. **Transfer the Vehicle To Us.** On the due date of your final payment, you may exercise your option to transfer the vehicle to us and have the amount of the transfer value applied to your final payment. If you exercise your option to transfer the vehicle to us, you must return the vehicle to us along with the title and any other required papers and pay us the

## Balloon Payment/Fixed Value (cont'd.)

additional amount you owe us in excess of the final payment; (2) a service [illegible] deducted from the amount shown on the front of this contract; (3) the excess wear and tear deduction, if any; and (4) the excess mileage deduction, if any. You agree to give us 30 days written notice before the due date of the final payment to arrange a convenient time and place for us or our agent to inspect the vehicle. We will inspect the vehicle to determine if an excess mileage deduction or an excess wear and use deduction is to be used in calculating the transfer value of the vehicle.

Excess wear and use includes, but is not limited to: (1) damage to the major driveline components (engine, transmission, differential) not covered by warranty; (2) damage to the vehicle's frame; (3) missing or broken parts or accessories, including optional factory equipment; (4) missing tires, tires that are lesser quality than the original tires, tires that are not produced by the same manufacturer, tires of different size or diameters, tires that have sidewall plugs, cuts or exposed cords, tires that have less than 1/8 inch tread, or wheels that are broken or scarred; (5) damage to the body, fenders, metalwork, lights trim or paint, including but not limited to dents or rust; (6) damaged or stained dash, floor covers, and seats; (7) broken glass, including stars, cracks, holes or pings in the windshield, or other glass; (8) failing to maintain the vehicle according to the manufacturers specifications; (9) after market alterations not installed by an authorized Chrysler dealer; (10) water damage; (11) damage to the interior or exterior that is beyond ordinary wear and use; and (12) any damage that makes the vehicle unsafe or unlawful.

The amount of the excess wear and use deduction is our estimate of what it will cost to repair the excess wear and use on the vehicle. The excess wear and use deduction will be applied whether or not we make the repairs. If you disagree with our determination of the excess wear and use deduction, you may get an estimate of the excess wear and use from an authorized dealer. If you get an estimate, the amount of the excess wear and use deduction will be the lesser of such estimate or our assessment amount. You understand that the greater the excess wear and use deduction the more you will have to pay us on the due date of the final payment because the transfer value of the vehicle is reduced by the excess wear and use deduction.

The excess mileage deduction is calculated as provided on the front of this contract. You understand that the greater the excess mileage deduction the more you will have to pay us on the due date of the final payment because the transfer value of the vehicle is reduced by the excess mileage deduction.

You agree to transfer the vehicle to us at Creditor's place of business shown on the front of the contract along with the Certificate of Title and any other papers or documents appropriate to transfer title no later than the due date of the final payment. You must also pay us the difference between the final payment and the transfer value of the vehicle.

## Additional Information

15. **WARRANTIES. If the vehicle is for personal use and we, or the vehicle's manufacturer, extend a written warranty or, within 90 days from the date of the contract, extend a service contract, you get the implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you agree there are no such implied warranties.**

16. **ASSIGNMENT.** You understand that this contract will be assigned to Assignee. Assignee will acquire all of our interest in this contract and in the vehicle including the right to receive all payments.

17. **GENERAL.** Unless otherwise provided in this contract, any change to this contract must be in writing and signed by all parties. Notice to you is sufficient if mailed to your last address shown by us. If the law does not allow a part of this contract, that part will be void. The remaining parts will be enforceable. If there is more than one Buyer, their obligation shall be joint and several. Any delay or omission by us in enforcing our rights shall not act as a waiver. Section headings in this contract are for convenience of reference only and are not part of the contract for any other purpose. We may assign our rights and obligations under this contract to anyone at any time without first notifying you. **To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.**

18. **DEFERRED PAYMENTS.** Any change to this contract must be in writing and signed by all the parties. However, if permitted by law, extensions, deferrals and due date changes may be agreed to orally by you and us, and we will send you a written confirmation of our agreement. Interest will continue to accrue until the next payment is received. Any deferral would not extend any purchased insurance coverage you have.

19. **POWER OF ATTORNEY.** You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney in fact. Your grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this contract are paid in full. As your attorney in fact we can: sign on your behalf on Certificates of Ownership, Registration Cards, applications, affidavits or any other documents required to register and properly perfect our security interest in the vehicle; transfer your entire interest in the vehicle as part of a repossession and sale or if you transfer the vehicle to us (see Paragraph 14.C); act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty or other optional insurance/coverage financed under this contract, and apply the refunded premium or cost to your outstanding balance if you are in default.

20. **GOVERNING LAW.** This contract shall be governed by the laws of the State of Wisconsin except, if the vehicle is repossessed, then the law of the state where the vehicle is repossessed will govern the repossession. Repossession effective through legal process will be governed by the laws of the state in which such process is brought.

21. **DECLARATION OF BUSINESS PURPOSE USE.** If the Use of Property is for business, you are declaring the vehicle will be used primarily, that is 50% or more, for business purposes. You agree that this contract, except as is expressly provided, will not be governed by chs. 421 to 427 of the Wisconsin Statutes.

## Important Arbitration Disclosures

22. **ARBITRATION. The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before *you sign the contract.***

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.
2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.
3. You agree to give up any right you may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.
4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.
5. Other rights that you and/or we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this contract, arbitration section or the arbitrability of any issue), between you and us or any of our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, which arises out of or relates to a credit application, this contract, or any resulting transaction or relationship arising out of this contract shall, at the election of either you or us, or our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor, which may be obtained by mail from the American Arbitration Association, Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or the Internet at http://www.adr.org/, or the applicable rules of the National Arbitration Forum, or its successor, which may be obtained by mail from The Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191, or on the Internet at http://www.arbitration-forum.com.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees, or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim.

This contract evidences a transaction involving interstate commerce. Any arbitration under this contract shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both you and Creditor and Creditor's employees, parents, subsidiaries, affiliate companies, agents, successors and assignees [illegible] remedies and to [illegible]

CF - ORIGINAL CUSTOMER - WHITE DEALER - YELLOW FILING - GREEN

[illegible form number]

NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.

THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE ARE A PART OF THIS CONTRACT.

# MOTOR VEHICLE PURCHASE CONTRACT

THIS IS AN OFFER TO PURCHASE THAT WILL BECOME A BINDING MOTOR VEHICLE PURCHASE CONTRACT IF ACCEPTED BY THE DEALER. THE DEALER MUST ACCEPT OR REJECT THE OFFER WITHIN 2 WORKING HOURS OF THE OFFER'S AUTHORIZATION ... DEALER SHALL BE PROHIBITED FROM SELLING THE VEHICLE TO ANY OTHER PARTY ...

DEALER NAME / ADDRESS / CITY, STATE, ZIP / TELEPHONE NO: 648 Broad Street, BELOIT, WI 53511, (608) 364-8830 (815) 389-4512 1-800-727-0326 — 43718 807250

STOCK NO. OR ORDER NO.: S239828 | MILEAGE AT SIGNING: 268 | ORDER DATE: 07/14/2007

SALESPERSON'S NAME (PLEASE PRINT): LYDON, ANGIE
SALESPERSON'S LICENSE NUMBER: L3500P1377670

PROSPECTIVE PURCHASER ("YOU") NAME(S): JAMIE C JENSEN MARY F JENSEN

PROSPECTIVE PURCHASER STREET ADDRESS: 866 MARVIN ST | CITY: SOUTH BELOIT | STATE: IL | ZIP: 61080-2247

| RESIDENCE PHONE | CELL PHONE | BUSINESS PHONE | RESIDENCE COUNTY | RESIDENCE TOWNSHIP | E-MAIL ADDRESS |
|---|---|---|---|---|---|
| (608)295-6245 | | (608)365-0147 | WINNEBAGO | | |

LICENSE NO

PLEASE ENTER MY ORDER FOR THE FOLLOWING DESCRIBED VEHICLE: XX NEW ❑ USED (❑ DEMO ❑ EXEC) TITLE AS ❑ CAR ❑ TRUCK ❑ OTHER

| | MODEL YEAR | MAKE – TRADE NAME | MODEL | BODY TYPE | COLOR | IDENTIFICATION NO |
|---|---|---|---|---|---|---|
| PURCHASED VEHICLE | 2007 | DODGE | RAM 150 | QUAD CAB | GRAY | 1D7HU18297S239828 |
| OWNED OR LEASED TRADE-IN | 2002 | FORD | EXPEDITIO | EDDIE BA | WHITE | 1FMFU18L82LA05771 |

**WARRANTY INFORMATION** (Check Applicable Boxes) Refer to separate document for coverages and exclusions.

**Manufacturer Warranty Information** (Dealer is not a party to any manufacturer warranty)

1. ❑ New Vehicle Manufacturer Warranty
2. ❑ Remaining vehicle mfr. warranty—Call mfr. or refer to warranty booklet for details.

Expiration: ________ (date) ________ (miles), whichever comes first.
Deductible to be paid by You $ ________
Transfer fee to be paid by You $ ________ Pay to: ❑ Dealer ❑ Manufacturer

3. ❑ Not known 4. ❑ Expired 5. ❑ Cancelled due to salvage or other vehicle history

**Dealer Warranty Information**

6. ❑ **AS IS—NO WARRANTY. DEALER DISCLAIMS ALL WARRANTIES INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**
7. ❑ Limited Warranty

Term: ____ (months) ________ (miles), whichever comes first.
Percent of retail repair costs to be paid by You: ____% Deductible to be paid by You $ ________

**SERVICE CONTRACT INFORMATION** Refer to separate document for coverages and exclusions.

8. ❑ Service Contract (Administered by N/A)

Terms: N/A (months) N/A (miles), whichever comes first.
Percent of retail repair costs to be paid by You: N/A % Deductible to be paid by You $ N/A

**OTHER CONDITIONS OF SALE**

DEALER INSTALLED ITEMS OR EXTENDED WARRANTIES LISTED IN THIS BOX DO NOT CARRY A CHRYSLER MANUFACTURER'S WARRANTY.

ANTICIPATED DELIVERY DATE: ________, 20__

**Regardless of reason, if the vehicle ordered by the purchaser is not available for delivery within 15 calendar days after the anticipated delivery date, the purchaser may cancel this order and shall, within one business day, receive a full refund of any down payment, and return of trade-in vehicle, or title for trade-in vehicle, or both. If the trade-in is not available, the purchaser shall receive the trade-in allowance. Unless delivery date is otherwise qualified on the purchase contract by the purchaser, if the ordered vehicle becomes available for delivery prior to the stated anticipated delivery date, the dealer licensee may require acceptance not less than 21 calendar days after having notified the purchaser of availability of delivery, in which case no penalty shall be assessed for nonacceptance of delivery prior to the stated anticipated delivery date.**

❑ **THE ORDERED VEHICLE MUST BE LOCATED**
**If the motor vehicle dealer and purchaser enter into a purchase contract for a new motor vehicle not available at the dealer's lot, the dealer and purchaser agree that the vehicle mileage upon delivery will not exceed ________ miles. Before vehicle delivery, purchaser has the right to cancel the purchase contract if the mileage of the vehicle exceeds that amount. The option to cancel ends at acceptance of delivery.**

❑ **This is a Finance Transaction.** (Check A. or B.): Closing scheduled at dealer's office on specified delivery date or as mutually agreed. You are obligated to purchase, subject to availability of financing through dealer, on terms:
A. ❑ in attached disclosure. These terms do not extend beyond the closing date if dealer is willing and able to deliver vehicle on these terms.
B. ❑ Acceptable to You.

❑ **This transaction is subject to financing being arranged through creditor of Your choice.** You must obtain acceptable financing and dealer must receive written notice by (date) ________, or this contract is void.

❑ **This is a cash transaction.** You are obligated to pay the balance due on delivery.

| | | |
|---|---|---|
| **USED:** PRICE from the Wisconsin Buyers Guide | | $ N/A |
| NEW: XX MSRP detail provided on window label; ❑ MSRP detail provided on attachment | | |
| Total MSRP (Manufacturer Suggested Retail Price) $ | | 36530.00 |
| Dealer Markup | | N/A |
| Dealer installed options — Has a warranty if at left. | | N/A |
| EP TAXABLE & OWNER CARE 2/24 | | 1843.16 |
| | | N/A |
| | | N/A |
| Total Dealer Installed Options | | 1843.16 |
| PRICE OF THE VEHICLE | | |
| a. Dealer Retail Price | 38373.16 | |
| b. Services Fee | N/A | |
| c. Discount | N/A | |
| 1. Cash Price (a + b – c) 1. | | 38373.16 |
| TAXABLE ITEMS PURCHASED WITH VEHICLE | | |
| d. Other | N/A | |
| e. Service Contract | N/A | |
| 2. Total of Taxable items (d + e) 2. | | N/A |
| TRADE ALLOWANCE | | |
| f. Owned Trade-in Allowance | 15039.00 | |
| Leased trade-in allowance (Net lease equity calculation) | N/A | |
| (i) Gross Allowance | N/A | |
| (ii) Estimated Lease Payoff | N/A | |
| Payoff to: | N/A | |
| g. Net Lease Equity (i – ii) | | |
| 3. Trade Allowance (f + g) (if number is negative add in line h and 8) 3. | | 15039.00 |
| SALES TAX CALCULATION | | |
| h. Amount Subject to Sales Tax (1 + 2 – 3) | | 23334.16 |
| 4. 6.2500% State, County and Regional Tax on h. 4. | | 1458.39 |
| NON-TAXABLE ITEMS PURCHASED WITH VEHICLE | | |
| j. Fees to appear on MV11 | 168.00 | |
| k. Warranty/Service Contract Transfer Fee | N/A | |
| l. Other | N/A | |
| 5. Total of Non-Taxable Items (j + k + l) 5. | | 168.00 |
| OWNED VEHICLE PAYOFF | | |
| Due to FIRST NATIONAL | | |
| 6. Estimated Payoff Amount on Owned Trade-in 6. | | 15460.60 |
| CASH & CASH EQUIVALENTS | | |
| m. Cash Down Payment on Order | N/A | |
| n. MANUFACTURER REBATES (CASH BACK / ASSIGNED): REBATE XX 5000.00 | | |
| BONUS CASH 2500.00 | | |
| EP INCENTIVE 1733.18 | | |
| o. Additional Cash Due (Date/Amount) | N/A | |
| 7. Total Cash and Rebates (m + n [if assigned] + o) 7. | | 9233.18 |
| 8. Due on Delivery or Balance to Finance (1 + 2 – 3 + 4 + 5 + 6 – 7) 8. $ | | 31168.07 |

A service fee is not required by law, but may be charged to motor vehicle purchasers or lessees for services related to compliance with state and federal laws, verifications and public safety, and must be reasonable.

❑ ORDER OUT VEHICLE NOT PRICE PROTECTED (See Back of Contract for Details)

THE APPRAISAL OF THE TRADE-IN IS BASED ON AN ODOMETER READING OF UP TO ________ MILES/KILOMETERS, AND THE TRADE-IN MAY BE REAPPRAISED IF IT EXCEEDS THIS LIMIT.

**This transaction is voidable at the option of the dealer at any time prior to the delivery of the purchased vehicle if any of the following representations are untrue. The undersigned purchaser(s) warrants that the below representations are true. The option to void this transaction in no way limits or restricts the election of other remedies available to the dealer prior to or after the closing of this transaction and these representations survive the closing of this transaction as to other remedies.**

YES NO

(A) That I am 18 years of age or older. ❑ ❑
(B) That I have full power, right and lawful authority to dispose of the trade-in. ❑ ❑
(C) That, except for the payoff amount that dealer agrees to make as indicated in the components of price of the Purchase Contract or under Other Conditions of Sale, I will ensure that any and all liens or encumbrances on the trade-in are satisfied and released before or immediately upon delivery of the trade-in to the dealer. ❑ ❑
(D) That the trade-in does not have a cracked or defective head, block, powertrain, or frame (including supportive portion of unibody). ❑ ❑
(E) That all parts of the trade-in emission control system are as originally installed by the manufacturer or have comparable and tested replacement equipment. ❑ ❑
(F) That the engine and transmission of the trade-in have not been changed from manufacturer's original equipment specifications. ❑ ❑
(G) That while I have owned or leased the trade-in its odometer has not been replaced, tampered with or otherwise altered in any way and I believe that the trade-in's current odometer reading of ________ miles/kilometers reflects its actual mileage. ❑ ❑
(H) That while I have owned or leased the trade-in its restraining devices (including airbags and belts) have not been replaced, tampered with, or otherwise altered in any way. ❑ ❑
(I) That the trade-in has not previously been a salvage vehicle, manufacturer buyback, or subject to any other title brands. ❑ ❑
(J) That the trade-in has not previously been flood or water damaged. ❑ ❑
(K) That the trade-in does not have any corrective welds or other evidence of repair to the strut tower, floor pan, frame or structural portion of the unibody. ❑ ❑
(L) That the only holder(s) of a security interest or lien in the trade-in ("Lienholders") is (are) shown below. ❑ ❑

Lienholder(s): FIRST NATIONAL

Explain All "NO" Answers: ________

No oral representations are binding unless written on this form. The document (including the terms printed on the Reverse Side) is the entire agreement between You and Dealer, and supersedes any prior agreements and representations, regarding the transactions described above. No modification or waiver of this agreement is enforceable against either party unless agreed to in writing by that party. You will receive a copy of this order.

As a deterrent to purchaser failing to take delivery on the vehicle as herein provided, you agree that if you do not accept delivery, you shall, at dealer's option, forfeit to dealer, as a penalty, 5 % (not to exceed 5%) of the cash price of the vehicle as authorized by Section 218.0141 Wisconsin Statutes. Dealer retains the right to bring action for actual damages caused by breach of this contract, in lieu of the above penalty.

YOUR SIGNATURE(S) [signature] DATE SIGNED 07/14/2007 TIME SIGNED A.M. P.M.

ACCEPTED BY DEALER OR AUTHORIZED AGENT; AUTHORIZED SIGNATURE [signature] DATE SIGNED 07/14/2007 TIME SIGNED A.M. P.M.

FORM NO. WISC-1

WATDA Services, Inc. 1-800-236-7672 / ADAMM Services, Inc. 1-414-359-9000 ©1 Rev. 2/04 Copyright 2004 WI Auto & Truck Dealers Assoc.

Reynolds and Reynolds TO ORDER www.reyforms.com, 1-800-344-0996 fax 1-800-531-9055

**IT IS FURTHER UNDERSTOOD AND AGREED:** This Purchase Contract is subject to the following terms and conditions which have been mutually agreed upon.

1. Customer acknowledges that time is of the essence and agrees to execute any actions and all forms of agreement or documents legally necessary as reasonably required by the dealer to complete the transaction included herein.

2. If the Manufacturer makes any changes in the model or design of any accessories and/or parts of any new motor vehicles at any time, it does not create any obligation on the part of the dealer to make corresponding changes in the vehicle covered by this order either before or subsequent to the delivery of such vehicle to you.

**Order-Out Vehicle Not Price Protected.**

Dealer – Transfer amounts to all plies of the Contract.

A. ❑ **Current model year price known.** If the manufacturer's suggested retail price increases before vehicle delivery, the final cash price shall be the current contract cash price (line 1), plus the increase in the manufacturer's suggested retail price adjusted by ________ % discount or ________ % markup of said increase.

B. ❑ **Price of newly introduced model currently unknown.** The final cash price shall be the total of the manufacturer's suggested retail price upon delivery plus the price of any dealer installed options set forth in the contract with ________ % discount subtracted from or ________ % markup added to the total.

However, if the final cash price of either A or B exceeds $________, the purchaser may cancel the contract without penalty. Also the dealer is not obligated to deliver unless the purchaser agrees to pay the final cash price.

3. CONTINGENT AGREEMENTS. If this purchase offer is for a vehicle for which the motor vehicle dealer has already executed a purchase contract, this contract shall clearly state that the purchase offer is contingent on the prior executed purchase contract not being completed. Such a contingent purchase offer shall also provide that you may rescind the offer at any time prior to being notified by the dealer that the prior executed purchase contract was not completed and that the contingency has been removed from your contingent purchase offer. If the purchase contract is rescinded or the prior executed purchase contract completed, any down payment or trade-in shall be returned to you within one business day.

4. ESTIMATED TRADE-IN LIEN PAYOFF AMOUNTS. When the payoff for a trade-in vehicle is unknown, the dealer may estimate the payoff in the itemization of vehicle price. Where such an estimate is used, you may rescind the purchase contract if the actual amount needed to pay off all extensions of credit secured by the motor vehicle exceeds the estimated payoff amount used in the itemized calculation of vehicle price by more than 1 payment on the note secured by the trade-in vehicle. The actual difference between the estimated payoff and the actual payoff shall be disclosed to the purchaser in writing. Your refusal to accept delivery of a vehicle or agree in writing to waive the payoff difference within 7 days of notification by the dealer that contract contingencies have been met and disclosure of the payoff difference shall rescind the purchase contract. Adjusting the contract price to reflect an actual loan payoff amount is not bushing if you choose to reform this contract to reflect the actual payoff.

5. VEHICLE REBATES. If, for any reason, you do not qualify for a rebate referenced on the face of this contract you may rescind this contract unless the dealer discounts the purchase price of the vehicle by the amount of the rebate. If you do not qualify for a rebate and the dealer will not provide a discount in the amount of the rebate, the dealer shall notify you in writing of

a. the fact that you do not qualify for the rebate

b. that the contract shall be rescinded unless you, within 7 days, sign a new purchase contract for the vehicle for the new, higher contract price.

If you refuse, within 7 days of receiving written notification, to execute a new purchase contract this contract will be rescinded. If you execute a new contract after being notified that you do not qualify for a rebate, you waive your objections related to the rebate.

6. Any increase in price, after having accepted an order of purchase or a contract from a retail buyer, is prohibited except that (a) a trade-in vehicle may be reappraised if it subsequently suffered damage, or parts and/or accessories have been removed or replaced, (b) mileage/kilometers exceed a limit as stated on the contract, or (c) as permitted by Trans 139.05, Wis. Adm. Code.

7. The dealer shall have the right to reappraise the motor vehicle to be traded-in and modify accordingly the delivery price of the motor vehicle purchased herein, if the said trade-in vehicle is subsequently damaged or parts and/or accessories have been removed or replaced, or if it exceeds any mileage/kilometer limitation stated on the face of this contract.

8. **TITLE INFORMATION:** This transaction is voidable at the option of the dealer or you if the certificate of title to the trade-in vehicle, or to the purchased vehicle, respectively, contains information, which materially affects the value of such vehicle and which is not disclosed on the face of this contract, and provided that written notice exercising such option is mailed or personally delivered to the other party within two business days of the date the appropriate certificate of title has first been made available to dealer or you for inspection.

9. The dealer's obligation to deliver the ordered vehicle to the purchaser is expressly conditioned upon the manufacturer delivering the vehicle to the dealer unless such nondelivery results from Dealer's acts or omissions.

10. NOTICE TO CONSUMER REGARDING INELIGIBILITY FOR FINANCING. If this contract is contingent upon the dealer providing financing as disclosed to you on a separate form (box A of the financing section) the dealer has 14 days to notify you if they are unable to obtain the financing. If you are not notified that financing is unavailable within 14 days, or if the vehicle is delivered at the disclosed finance terms, the dealer must finance the vehicle according to the disclosed finance terms.

If this contract is contingent upon the dealer providing financing acceptable to you (box B of the financing section) the dealer may at any time prior to delivery provide you with the required financing disclosures. If you accept delivery of the vehicle or accept the proposed financing the contract is enforceable as written. If you fail to respond or reject the disclosures, the contract is rescinded.

If this contract is contingent upon you arranging financing you must provide evidence to the dealer that financing has been arranged by the agreed upon date, or delivery, or the contract is rescinded.

If this contract is a cash transaction you are bound to the terms of the contract.

*If you have taken delivery of the vehicle this contract is final.*

11. **THE DEALER SHALL NOT BE LIABLE TO THE BUYER FOR ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES ARISING OUT OF THE SALE OR USE OF THE PURCHASED VEHICLE.**

Contact the selling motor vehicle dealer to discuss any questions or problems about your vehicle or this contract. If you are unable to resolve any disputes with the dealer, you may contact:

Division of Motor Vehicles, Dealer Section
Wisconsin Department of Transportation
P.O. Box 7909
Madison, WI 53707-7909

The Dealer Section licenses motor vehicle dealers and administers the administrative regulations governing consumer protection in vehicle sale transactions, Ch. Trans 139, Wis. Admin. Code.

## Owned Versus Leased Trade-In

The term "trade-in" refers to an owned or leased vehicle. For the purposes of this document, the value of an owned "trade-in" is the "trade-in allowance". The value of a leased "trade-in" is the "gross allowance".

The sales tax treatment differs depending on whether the "trade-in" is owned or leased:

**Owned Vehicle Trade-In**

Excerpted from Wisconsin Dept. of Revenue's *Publication 202* (1/01) II.B.1.a.

> "If the sale of a motor vehicle and the (owned) trade-in are one transaction, gross receipts and sales price subject to Wisconsin sales or use tax do not include the amount of the (owned) trade-in. Therefore, if a motor vehicle is traded for a motor vehicle of greater value, the amount subject to tax is only that amount representing the difference between the full purchase price and the amount allowed for the (owned) motor vehicle trade-in."

**Leased Vehicle Trade-In**

Because the lessee only pays sales/use tax on a leased vehicle as he or she uses that vehicle, the lessee does not get a sales tax credit for the gross allowance, only for the amount of positive leased trade-in allowance. Leased trade-in allowance is determined by subtracting the payoff and any amount refunded to the customer from the gross allowance. Positive leased trade-in allowance reduces the amount subject to sales tax. Negative leased trade-in allowance, or being "upside down", increases the amount subject to sales tax.

STATE OF ILLINOIS

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1D7HU18297S239828 | 2007 | DODGE | RAM 1500 QUAD ST | PICKUP | X7253690096 |

1D7HU18297S239828

| DATE ISSUED | ODOMETER | CCM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 09/10/07 | 268 | | NEW | 07/13/07 |

268

_ MOBILE HOME SQ. FT.

TYPE OF TITLE
ORIGINAL

MAILING ADDRESS

DC FIN SVCS AMER LLC
PO BOX 99573
SACRAMENTO CA 95899

LEGEND(S)

ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS

JAMIE C JENSEN
MARY F JENSEN
866 MARVIN ST
SOUTH BELOIT IL 61080

FIRST LIENHOLDER NAME AND ADDRESS

DC FIN SVCS AMER LLC
PO BOX 99573
SACRAMENTO CA 95899

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**

The holder of Lien on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

_______ Firm Name By _______ Signature of Authorized Agent Date _______

_______ Firm Name By _______ Signature of Authorized Agent Date _______

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: Address:

▶ **Federal and State law** requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ _______ ODOMETER READING [NO TENTHS]

☐ **1. The mileage stated is in excess of its mechanical limits.**
☐ **2. The odometer reading is not the actual mileage."**
**WARNING–ODOMETER DISCREPANCY**

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

**Signature(s) of Seller(s)** _______

**Printed Name(s) of Seller(s)** _______ DATE OF SALE _______

"I am aware of the above odometer certification made by seller."

**Signature(s) of Buyer(s)** _______ **Printed Name** _______

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

EXHIBIT B

G04107074
CONTROL NO.

Jesse White
JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.